588 A.2d 779

**Nathan BERGSTEIN**

v.

**STATE of Maryland.**

**No. 13, Sept. Term, 1990.**

Court of Appeals of Maryland.

April 15, 1991.

508

Brian E. Barkley (Barkley & Kennedy, Chartered, both on brief), Rockville, for appellant.

Daniel J. O'Brien, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., C. Frederick Ryland, and Janet K. Brown, Asst. Attys. Gen., all on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

CHASANOW, Judge.

On November 30, 1983, Nathan Bergstein was charged with committing a robbery with a dangerous weapon. He was found "not guilty by reason of insanity." [1] As a result of the finding, Bergstein was committed to the Department of Health and Mental Hygiene (DHMH) pending further order of the court. Bergstein was subsequently granted his first conditional release from commitment on February 13, 1985. Approximately nine months later, the State filed a

---

1. The correct form of the verdict is "not criminally responsible by reason of insanity." *Langworthy v. State,* 284 Md. 588, 399 A.2d 578 (1979), *cert. denied,* 450 U.S. 960, 101 S.Ct. 1419, 67 L.Ed.2d 384 (1981); Maryland Code (1982, 1990 Repl.Vol.), Health–General Article, § 12–109 as enacted by Chapter 501 of the Acts of 1984.

petition to revoke the conditional release. After reevaluation, the DHMH recommended that Bergstein's conditional release be continued.

The State's Attorney filed a second petition for revocation of Bergstein's conditional release in September of 1987 alleging, among other things, that Bergstein had made telephone calls to the clinical director's office at the state hospital where Bergstein had been committed. In one conversation, Bergstein stated that he had become a secret agent for the state police and was assigned to travel to Nicaragua and to kill that country's president. The circuit court signed an order recommitting Bergstein for evaluation. At the time he was taken into custody, Bergstein had a handgun in his possession. Following a revocation hearing, Bergstein's release was recommended by the hearing examiner. The DHMH excepted to the examiner's recommendation. The Circuit Court for Montgomery County initially reversed the hearing examiner and, in turn, was reversed on appeal by the Court of Special Appeals in *Bergstein v. State*, 76 Md.App. 554, 547 A.2d 668 (1988). The intermediate appellate court held that the trial court's assignment to Bergstein of the burden to prove his continued eligibility for conditional release violated the prohibition against ex post facto laws. *Id.* The burden of proof, originally placed on the State, was statutorily changed in 1984[2] to require that the individual have the burden of proving eligibility for conditional release by a preponderance of the evidence.[3]

Upon rehearing, the circuit court decided that Bergstein was eligible for a new conditional release. The judge specifically relied on the ability of Bergstein's wife, Toshiko Bergstein, to supervise him and her willingness to report

---

**2.** Ch. 501 of the Acts of 1984 replaced Md.Code (1982), Health–General Art., § 12–115 with § 12–120.

**3.** This change does not affect the decision in the instant appeal. Our decision regarding the admissibility of hearsay applies equally to pre and post 1984 adjudications.

any violations of the conditional release order. The conditional release order included the following requirements:

"1. That [Nathan Bergstein] reside with his wife, Toshiko Bergstein.

2. That the said Toshiko Bergstein shall supervise his activities including the taking of his required medication and shall report to the Department of Health and Mental Hygiene any deviation therefrom or from any of the other conditions of this conditional release.

\*　　\*　　\*　　\*　　\*　　\*

7. That he abstain from the use of any alcohol whatsoever, and from all prescription and over the counter drugs and medicines, unless specifically approved by his clinicians.

\*　　\*　　\*　　\*　　\*　　\*

9. That he will immediately discuss with the Department of Health and Mental Hygiene and/or its designees, and will agree to abide by any resulting recommendations in respect to the following:

a. change in residence or employment;

b. change in marital status or family composition;

c. change in physical or mental health;

d. legal involvements;

e. trips outside the State of Maryland;

f. failure to meet clinical appointments."

On May 24, 1989, the State's Attorney for Montgomery County filed a petition to revoke Bergstein's conditional release. The petition was based on a report from Patrick Connealy, Assistant Coordinator of the Community Forensic Aftercare Program at Clifton T. Perkins Hospital Center. The information supplied by Mr. Connealy was that Toshiko Bergstein called him and disclosed that, the night before, Bergstein drank liquor, brutally assaulted her, stole her credit cards and cash, and drove away in her car. The State's Attorney's petition further alleged that these actions violated the conditional release and, as a result, there was reason to believe that Bergstein was a danger to

himself or others. Based on the petition, a circuit court judge issued a body attachment for Bergstein.[4] He was subsequently apprehended and returned to Clifton T. Perkins State Hospital Center.

A hearing was held before a hearing examiner pursuant to the provisions of Maryland Code (1982, 1990 Repl.Vol.), Health–General Article, § 12–120. Patrick Connealy was the first witness called. Over the objection of Bergstein's attorney, Connealy was permitted to testify to the conversation he had with Toshiko Bergstein. He stated that Mrs. Bergstein called him on May 23, 1989, and reported that, on the previous evening, her husband had been drinking, assaulted her and tried to kill her, stole her cash and credit cards, and drove away in her car. Mrs. Bergstein was present at the revocation hearing and testified next. After a few preliminary questions, Nathan Bergstein apparently motioned to his wife not to answer any questions. The hearing examiner then stated, "let the record reflect that Mr. Bergstein made a motion with his hand across his lips as if to indicate that his wife should not answer the question." When Mrs. Bergstein became reluctant to answer any further questions, the hearing examiner informed her that she could not be compelled to answer questions because the hearing examiner did not have the power to cite her for contempt if she refused to respond. Mrs. Bergstein did confirm that she called Mr. Connealy on May 23, 1989, and told him that her husband left home with her car the previous evening, but in response to all other questions concerning the events of May 22, she responded that she did not want to talk about it.

The next witness called was Dr. Brian Crowley, a senior forensic psychiatrist on the Perkin's staff.[5] Dr. Crowley

---

4. As authorized by Md.Code (1982, 1990 Repl.Vol.), Health–General Art., § 12–120.

5. Dr. Brian Crowley has testified as an expert witness in a number of significant forensic cases. *See, e.g., Anderson v. Dep't of Health & Mental Hyg.,* 64 Md.App. 674, 498 A.2d 679 (1985), *rev'd,* 310 Md. 217,

was familiar with Bergstein's psychiatric history and had interviewed him prior to the hearing. The doctor testified that Bergstein was suffering from a psychiatric disorder that had resulted in periodic hospitalization over the past 28 years. He also testified that, based on his review of the entire medical record, he believed that Bergstein had used alcohol when he was on conditional release, and that the alcohol had contributed to the deterioration of Bergstein's mental condition. Dr. Crowley concluded that Bergstein presented a danger to the life and safety of others due to his mental disorder, and while he might be eligible for conditional release in the future, he was not presently eligible.

Bergstein called as a witness his therapist, Dr. Leonard Rothstein, who opined that Bergstein would not be dangerous to himself or others if he was released conditionally and returned to live with his wife. Dr. Rothstein also testified that Bergstein did not keep a June 8, 1989, appointment. He further stated that, on or about that date, Bergstein telephoned him from Michigan. Bergstein did not testify.

The hearing examiner stated in her report that the formal rules of evidence do not apply to a release hearing and that reasonably reliable, relevant evidence, including hearsay, is admissible.[6] Because the hearsay evidence was reliable and relevant, she found that it was admissible. In her written opinion, she found that the State proved by clear and convincing evidence that Bergstein:

 1. Had consumed alcohol.

---

528 A.2d 904 (1987); *Porreca v. State,* 49 Md.App. 522, 433 A.2d 1204 (1981); *Gregory v. State,* 40 Md.App. 297, 391 A.2d 437 (1978); *Pratt v. State,* 39 Md.App. 442, 387 A.2d 779 (1978), *aff'd,* 284 Md. 516, 398 A.2d 421 (1979); *Bremer v. State,* 18 Md.App. 291, 307 A.2d 503, *cert. denied,* 269 Md. 755 (1973), *cert. denied,* 415 U.S. 930, 94 S.Ct. 1440, 39 L.Ed.2d 488 (1974).

**6.** Maryland Code (1982, 1990 Repl.Vol.) Health–General Art., § 12–114(e) states: *"Release Hearing—Conduct.—*(1) Formal rules of evidence do not apply to the release hearing, and the hearing officer may admit and consider any relevant evidence."

2. Failed to notify DHMH or its designee of his movement outside the state.

3. Is a danger to himself or others by virtue of the assault upon his wife and was in need of established care and treatment.

Bergstein filed exceptions to the Hearing Examiner's report in the Circuit Court for Montgomery County. The circuit court found that the evidence presented at the hearing was reliable and that Bergstein was not denied due process. Bergstein was granted leave to appeal by the Court of Special Appeals and this Court decided to hear the case before the intermediate appellate court ruled on the matter.

We are called upon to decide whether reliable hearsay is admissible at a hearing to revoke the conditional release of a person who was committed to a mental health facility after being found not guilty of a crime by reason of insanity.

It is clear that formal rules of evidence do not apply at a hearing to revoke conditional release. The hearing examiner is free to consider reliable, relevant evidence. Md.Code (1982, 1990 Repl.Vol.), Health–General Art., § 12–114(e). In the instant case, the hearsay testimony of Mr. Connealy was relevant and sufficiently reliable to be admitted at the hearing. If the hearsay is reliable, it may become the basis for finding a violation of a term of an individual's conditional release.[7]

We have previously found that reasonably reliable hearsay may be received into evidence in a probation revocation hearing and that the formal rules of evidence need not be applied. *State v. Fuller,* 308 Md. 547, 553, 520 A.2d 1315,

---

**7.** For information on conditional release, see generally, Annotation, *Right to Notice and Hearing Prior to Revocation of Conditional Release Status of Mental Patient,* 29 A.L.R.4th 394 (1984); Annotation, *Validity of Conditions Imposed when Releasing Person Committed to Institution as Consequence of Acquittal of Crime on Ground of Insanity,* 2 A.L.R.4th 934 (1980).

1317 (1987). *See also Gagnon v. Scarpelli,* 411 U.S. 778, 789, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656, 665–66 (1973). In the aforementioned situation, the trial judge must test the evidence

> "against the formal rules of evidence to determine whether it fits any of the exceptions to the hearsay rule. If it does, the evidence and exception should then be reviewed to determine whether the criteria for satisfaction of the Confrontation Clause have been met. If the criteria have been met, the evidence may be received on that basis, and no specific finding of good cause need be made. If, however, the proffered hearsay evidence runs afoul of rules of evidence applicable to revocation proceedings or the Confrontation Clause, it cannot be admitted unless it satisfies the standard of reasonable reliability and the trial judge makes, and states in the record, a specific finding of good cause." (Footnote omitted.)

*Fuller* at 553, 520 A.2d at 1318. To determine good cause we suggested that the trial court

> "evaluate such factors as: the explanation offered by the State for dispensing with confrontation, the reliability of the evidence which the State offers in lieu of live testimony, and whether the evidence is offered to prove a probation violation or is merely offered as evidence of such matters as the defendant's general character on probation."

*Id.* at 553–54 n. 5, 520 A.2d at 1318 n. 5.

 Although a probation/parole revocation hearing is not identical to a hearing to revoke conditional release, some similarity is apparent. Both involve an adjudication of whether an individual violated the terms of his or her release and whether this violation should result in reconfinement. Nonetheless, there are significant differences between a mental health patient on conditional release and a convicted criminal on parole or probation. Parole and probation are essentially a product of punitive sanctions imposed for the commission of a criminal act. *See Morrissey v. Brewer,* 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d

484, 492 (1972) ("parole is an established variation on imprisonment of convicted criminals"); *Hudgins v. State,* 292 Md. 342, 347, 438 A.2d 928, 930 (1982) ("after guilt has been established, the granting of probation is a matter of grace and an act of clemency bestowed by the court"). A violation of parole or probation is a willful or knowing violation of a condition of the parole or probation. Conditional release, however, is not a tool of the penal system. Rather, it is a therapeutic release of a mentally ill individual from a psychiatric hospital as part of a continuing course of treatment.[8] The deprivation of liberty involved in the initial hospitalization or in rehospitalization clearly is not imposed as a punishment. "[T]he test for the release of a person committed to a mental institution is whether the patient if released would be a danger to the welfare of himself or society as a whole." *Alexander v. Superintendent,* 246 Md. 334, 337, 228 A.2d 236, 238 (1967). Violation of a conditional release, even if unintentional, can result in recommitment. A patient may suffer a relapse resulting in a deterioration of his or her mental condition that renders the patient incapable of intentionally violating the conditions of release. If this causes the individual to be a danger to self or others, then the need for immediate recommitment is of paramount importance for both the public's and the patient's safety. On the other hand, if a patient intentionally violates a term of his/her conditional release, but it is clear that the violation does not result in the patient being a

8. "Conditional release provides the Mental Hygiene Administration with a legal mandate to monitor an insanity acquittee's compliance with certain treatment oriented conditions imposed by court order when the patient is discharged. The specific requirements of each conditional release are developed over a period of several months by the treatment team in conjunction not only with the patient himself, but also with family and any involved community support systems."
 M. Spodak, S. Silver, C. Wright, *Criminality of Discharged Insanity Acquittees: Fifteen Year Experience in Maryland Reviewed* 4 (1983) (Attachment to *Report to the Governor, Governor's Task Force to Review the Defense of Insanity* (1983), later published at 12 Bull.Am. Acad. Psychiatry Law 373–82 (1984)).

danger to self or others, such a violation should not result in rehospitalization, since the purpose of the rehospitalization is therapeutic, not punitive.

 If hearsay is used to establish a violation of the conditional release, the violation is a threshold finding. Under Md.Code (1982, 1990 Repl.Vol.) Health–General Art., § 12–113(c), "[a] committed individual is eligible for conditional release from commitment *only* if that individual would not be a danger, as a result of mental disorder or mental retardation, to self or to the person or property of others if released from confinement with conditions imposed by the court." (Emphasis added.) The finding that one or more of the terms of conditional release have been violated is a prerequisite to, but does not mandate, revocation of the conditional release. The patient may be able to demonstrate that, notwithstanding the violation, the patient would not be a danger to himself/herself or others if permitted to remain out of the hospital under existing or modified conditions.[9]

In the instant case, the hearing examiner determined that the State proved by clear and convincing evidence[10] that Bergstein violated several terms of his conditional release, namely,

"1. ... that Nathan Bergstein violated the conditions of his release by consuming alcohol.

2. ... that Nathan Bergstein violated the conditions of his release by failing to notify the Department of Health and Mental Hygiene ... of his movement outside the State of Maryland.

3. ... that Nathan Bergstein, by reason of his mental disorder, was a danger to his own safety and the person

---

9. Indeed, a conditional release may include the condition that the individual not become a danger to himself/herself or others.

10. As directed by *Bergstein v. State,* 76 Md.App. 554, 547 A.2d 668 (1988), the hearing examiner looked to Md.Code (1982) Health–General Art., § 12–115 for the appropriate burden of proof required.

or property of others ... and was in need of inpatient institutional care or treatment."[11]

Dr. Rothstein, Bergstein's own expert witness, testified that Bergstein told him that he had struck his wife, albeit lightly. The threshold finding that several terms of the conditional release had been violated was based on reliable hearsay. Mr. Connealy relayed information that was supplied to him by Mrs. Bergstein shortly after the incident occurred. The reliability of the hearsay is supported by Bergstein's motioning to his wife at the trial to be silent, Bergstein's own admission that he struck his wife, and Bergstein's unauthorized travel outside the state of Maryland. Bergstein could have cross-examined his wife regarding Mr. Connealy's testimony about the conversation with Mrs. Bergstein, yet chose not to avail himself of the opportunity. The hearing examiner's recommendation that Bergstein's conditional release be revoked was based on her findings by clear and convincing evidence that Bergstein violated his conditional release and that he was a danger to himself or others. We should point out that the current statute, Md.Code (1982, 1990 Repl.Vol.), Health–General Article, § 12–120, changes the burden of proof. Under section 12–120(g)(3), the State has the burden of proving a violation of one or more terms of the conditional release by a preponderance of the evidence, and the committed individual has the burden of proving continued eligibility for release by a preponderance of the evidence.

Bergstein also claims that he was deprived of his liberty without due process. Although it is true that there was a significant liberty interest at stake, Bergstein was not denied due process by the admission of hearsay testimo-

---

11. The conditional release order also required Mrs. Bergstein to supervise her husband and report any violations to DHMH. That condition was violated when she refused to testify, in effect saying that she would no longer report any violations. Nevertheless, Mrs. Bergstein's failure to report was not a basis for the initial Petition to Revoke, since it obviously had not occurred at the time Bergstein was picked up on the body attachment.

ny at the revocation hearing. Bergstein's liberty interest must be weighed against the state's interest in protecting both society and the patient.

The finding that Bergstein was not guilty by reason of insanity presupposes that he committed an illegal act. Inherent in this inference is the indicia of continuing dangerousness. *Jones v. United States,* 463 U.S. 354, 363–64, 103 S.Ct. 3043, 3049, 77 L.Ed.2d 694, 705 (1983). In *Jones,* a person was hospitalized in a psychiatric facility after being found not guilty by reason of insanity of petty larceny. Jones claimed that he should be released because he had already been confined for a period longer than the maximum sentence authorized for the crime with which he was accused. The Supreme Court held that 1) when a criminal defendant establishes, by a preponderance of the evidence, that he or she is not guilty by reason of insanity, the government may commit the person to a mental institution and 2) the acquittal by reason of insanity constitutes a sufficient basis for indefinite hospitalization for the purposes of treatment and protection of society. *Id.* at 366–67, 103 S.Ct. at 3051–52, 77 L.Ed.2d at 706–08. The finding beyond a reasonable doubt that Jones committed a criminal act itself demonstrated dangerousness. When coupled with the determination that the action was a product of mental illness, the automatic commitment was not violative of Jones' due process rights. The Supreme Court further concluded that the statutory presumption that insanity, once established, continues to exist was both reasonable and constitutionally permissible. *Id.* at 366, 103 S.Ct. at 3050, 77 L.Ed.2d at 706.

▇ Procedural due process, perhaps in a somewhat truncated form, is obligatory before an individual's parole or probation may be revoked. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). "Once a State has granted prisoners a liberty interest, ... due process protections are necessary 'to insure that the state-created right is not arbitrarily abrogated.'" *Vitek v.*

*Jones,* 445 U.S. 480, 488–89, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552, 562 (1980) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935, 951 (1974)). In *Morrissey,* the Supreme Court stated that the "full panoply of rights due a defendant in [a criminal prosecution] does not apply to parole revocations." *Morrissey,* 408 U.S. at 480, 92 S.Ct. at 2600, 33 L.Ed.2d at 494. The Court explained, "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Id.* We shall assume that this is equally true of revocation of a conditional release. The revocation of Bergstein's conditional release was effected with ample consideration for his due process rights. The hearing examiner and the circuit court judge based their decisions on reasonably reliable evidence. They appropriately balanced the interests of society in confining a psychiatric patient who has become a danger to self or others against the patient's conditional liberty interest.

JUDGMENT OF CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.