*Romechia Simms v. Maryland Department of Health, et al.*, No. 20, September Term, 2019

**DUE PROCESS — CONDITIONAL RELEASE — HOSPITAL WARRANT — DANGEROUSNESS —** The legal standard for a court issuing a hospital warrant pursuant to § 3-121 of the Criminal Procedure Article of the Maryland Code (2001, 2008, 2018 Repl. Vol.) ("CP") is whether the court has probable cause to believe that an individual violated her conditional release. Because a committed person is presumed dangerous if she violates a term of her conditional release, a separate finding of dangerousness is not required for the issuance of a hospital warrant. The Court of Special Appeals did not err in concluding that CP § 3-121 does not violate due process under the Federal Constitution or the Maryland Declaration of Rights.

Circuit Court for Howard County
Case No. 13-C-17-112909
Argued: October 4, 2019

IN THE COURT OF APPEALS
OF MARYLAND

No. 20

September Term, 2019

ROMECHIA SIMMS

v.

MARYLAND DEPARTMENT OF HEALTH,
ET AL.

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Greene, Clayton Jr. (Senior Judge,
Specially Assigned)

JJ.

Opinion by Barbera, C.J.

Filed: January 30, 2020

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Maryland law provides a mechanism by which a person can be determined to have been guilty of a crime but "not criminally responsible" for its commission. *See generally* Incompetency and Criminal Responsibility in Criminal Cases, Md. Code (2001, 2008 Repl. Vol., 2018 Cum. Supp.) Crim. Proc. ("CP") §§ 3-101–123. Under that circumstance, the person is committed to the Maryland Department of Health ("Health Department"). The statutory scheme provides, in appropriate circumstances, the option of a court order allowing for the committed person's "conditional release" to the community with specific conditions to which the committed person must adhere. The statutory scheme also spells out what occurs if a committed person, after having been placed on conditional release, is alleged to have violated one or more conditions of release. The present case focuses on the steps a court is to take upon receiving a State's Attorney ("State") petition alleging that a committed person has violated conditional release.

Ms. Romechia Simms, upon pleading guilty in the Circuit Court for Charles County to involuntary manslaughter in connection with the death of her young child, was found not criminally responsible. She was committed to the Health Department and conditionally released pursuant to court order. Later, the State filed with the circuit court a petition for revocation or modification of Ms. Simms' conditional release, alleging that she had violated a condition of her release. Acting pursuant to CP § 3-121, the court reviewed the petition, and upon "determin[ing] that there is probable cause to believe" that Ms. Simms "has violated a conditional release," issued a hospital warrant. Upon execution of the warrant and in furtherance of the court's order, Ms. Simms was recommitted to a mental health facility in anticipation of a required hearing before an

Administrative Law Judge ("ALJ") "[w]ithin 10 days after the committed person is returned to the Health Department in accordance with the hospital warrant." CP § 3-121(e)–(f).

Ms. Simms asserts that the process for issuing a hospital warrant and recommitment pending the hearing on the petition for revocation or modification violates constitutional due process. Ms. Simms argues that recommitment of a person alleged to have violated conditional release must be based not only upon the stated requirement that the court find "probable cause to believe that the committed person has violated a conditional release," CP § 3-121(e), but must also include a finding, not mentioned in that subsection or elsewhere in Title 3 of the Criminal Procedure Article ("Title 3"), that the committed person was currently a danger to self or to the person or property of others.

For reasons that follow, we hold that CP § 3-121(e) does not violate due process under either the Federal Constitution or the Maryland Declaration of Rights. We are satisfied that a court may issue a hospital warrant upon a finding of probable cause to believe that the committed person violated a term of her conditional release, without also having to make a finding that the committed person is presently dangerous. Accordingly, we affirm the judgment of the Court of Special Appeals.

**I.**

**Statutory Procedures Related to**
**Conditional Release and Hospital Warrants**

The question before us requires that we focus on the hospital warrant procedure set forth in CP § 3-121(e)(1). It is helpful, though, to consider that subsection together with

2

the remainder of that section and others contained in Title 3.  We therefore begin with a brief overview of the relevant portions of Title 3.[1]

Title 3 provides that a court[2] is to commit a person to the Health Department if that person has been found not criminally responsible for the commission of a criminal act.[3] Once committed, the "committed person"[4] may be granted conditional release if that person "would not be a danger . . . to self or to the person or property of others if released from confinement with conditions imposed by the court."  CP § 3-114(c).

CP § 3-121 ("Allegations of violations of conditional release") lays out the process by which such allegations are addressed.  Subsections 3-121(a) through (e) provide, among other procedures, that upon a petition from the State for revocation or modification of conditional release,[5] the court is to review the petition to determine whether "there is

---

[1] Title 3 also provides procedures involving competency to stand trial, which are not at issue in this case.  *See* CP §§ 3-101(f), 3-103–08.

[2] CP § 3-101 defines certain terms used throughout Title 3.  Subsection 3-101(c) defines "[c]ourt" to mean "a court that has criminal jurisdiction."

[3] The test for criminal responsibility is found in CP § 3-109.  That section provides in relevant part:
> A defendant is not criminally responsible for criminal conduct if, at the time of that conduct, the defendant, because of a mental disorder or mental retardation, lacks substantial capacity to:
> > (1) appreciate the criminality of that conduct; or
> > (2) conform that conduct to the requirements of law.

[4] CP § 3-101(b) defines "[c]ommitted person" to mean "a person committed to the Health Department as not criminally responsible under the test for criminal responsibility."

[5] CP § 3-121 provides the following in subsections (a) through (c):

3

(a) *Determination of factual basis by a State's Attorney.* —

(1) If the State's Attorney receives a report that alleges that a committed person has violated a condition of a conditional release, or if the State's Attorney is notified by the court or Health Department under subsection (b) of this section, the State's Attorney shall determine whether there is a factual basis for the complaint.

(2) If the State's Attorney determines that there is no factual basis for the complaint, the State's Attorney shall notify the person who made the report and take no further action.

(3) If the State's Attorney determines that there is a factual basis to believe that the committed person has violated the terms of a conditional release and believes further action by the court is necessary, the State's Attorney promptly shall:

(i) notify the Health Department of the alleged violation; and

(ii) file with the court a petition for revocation or modification of conditional release and send a copy of the petition to the Health Department.

(b) *Action by the court and Health Department.* —

(1) If a court receives a report that alleges that a committed person has violated a condition of a conditional release, the court promptly shall:

(i) notify the Health Department; and

(ii) notify the State's Attorney and provide the name, address, and telephone number of the person who reported the violation and a copy of the order for conditional release.

(2) If the Health Department receives a report that alleges that a committed person has violated conditional release, the Department shall:

(i) notify the court and the State's Attorney; and

(ii) provide the State's Attorney with the name, address, and telephone number of the person who reported the violation and a copy of the order for conditional release.

(c) *Petition for revocation or modification.* — The petition for revocation or modification of a conditional release shall contain:

(1) a statement that the committed person has violated a term of a conditional release and that there is therefore reason to believe that the committed person no longer meets the criteria for eligibility for conditional release;

(2) a statement of the conditions violated;

(3) the factual basis for the statements in items (1) and (2) of this subsection;

(4) the most recent evaluation report on the committed person; and

4

probable cause to believe that the committed person has violated a conditional release[.]"

CP § 3-121(e). If the court finds there is such probable cause, then the court "promptly shall . . . issue a hospital warrant[6] for the committed person and direct that on execution the committed person shall be transported to the facility designated by the Health Department[.]" CP § 3-121(e)(1). The court then sends a copy of the hospital warrant to the State, the Public Defender, counsel of record for the committed person, the Office of Administrative Hearings ("Office"), and the Health Department. CP § 3-121(e)(2).

"Within 10 days after the committed person is returned to the Health Department in accordance with the hospital warrant, the Office shall hold a hearing[.]" CP § 3-121(f). At that hearing the committed person is entitled "to be represented by counsel[,] . . . to offer evidence, to cross-examine adverse witnesses, and to exercise any other rights . . . consider[ed] necessary for a fair hearing[.]" CP § 3-121(g)(1)–(2).

The ALJ presiding over the revocation hearing determines "(i) whether, by a preponderance of the evidence, the State has proved that the committed person violated

---

<span>(5) the designation by the Health Department of the facility to receive the returned committed person.</span>
CP § 3-121(a)–(c).

[6] CP § 3-101(e) defines "[h]ospital warrant" to mean the following:
a legal document issued by a court that:
(1) authorizes any law enforcement officer in the State to apprehend a person who is alleged to have violated an order for conditional release and transport the person to a facility designated by the Health Department; and
(2) requires that the issuance of the warrant is entered in the person's criminal history record information of the criminal justice information system.

5

conditional release; and (ii) whether, by a preponderance of the evidence, the committed person nevertheless has proved eligibility for conditional release." CP § 3-121(g)(3). Once the hearing is concluded, the ALJ "promptly shall: (i) send a report of the hearing and determination to the court; and (ii) send copies of the report to the committed person, counsel for the committed person, the State's Attorney, and the Health Department." CP § 3-121(h)(1).

Section 3-121(h)(2) provides a five-day opportunity for the committed person, the State, or the Health Department to file exceptions to the determination of the ALJ. Section 3-121(i) addresses the court's obligations upon receiving the ALJ's report:

> After the court considers the report of the Office, the evidence, and any exceptions filed, within 10 days after the court receives the report, the court shall:
> (1) revoke the conditional release and order the committed person returned to the facility designated by the Health Department;
> (2) modify the conditional release as required by the evidence;
> (3) continue the present conditions of release; or
> (4) extend the conditional release by an additional term of 5 years.

CP § 3-121(i). The committed person has the right to appeal the court's decision. CP § 3-121(k).[7]

---

[7] Subsection 3-121(k) provides: "(1) An appeal from a District Court order shall be on the record in circuit court. (2) An appeal from a circuit court order shall be by application for leave to appeal to the Court of Special Appeals."

## II.

## This Case:  The Facts and Procedural History

A. *Underlying Facts and Court's Imposition of Conditional Release*

The facts of this case are undisputed.  In February 2016, Ms. Simms appeared before the Circuit Court for Charles County and entered an *Alford* plea to the commission of involuntary manslaughter in causing the death of her three-year old son.[8]  After accepting the plea, the court found that, at the time of the crime, Ms. Simms suffered from a mental disorder that caused her to lack the capacity to appreciate the criminality of her act and act in accordance with the law.  Then, pursuant to CP § 3-110, the court made the additional finding that Ms. Simms was not criminally responsible at the time of the offense.

The circuit court determined that Ms. Simms would not be a danger to herself or others if released from confinement with certain conditions.  Pursuant to CP § 3-111 and § 3-112, the court issued an Order of Conditional Release in March 2016 that detailed sixteen conditions requiring Ms. Simms' compliance over a five-year period.  Among those conditions Ms. Simms was required to attend regularly scheduled therapy appointments.  In March 2017 the court amended its original Order of Conditional Release

---

[8] The reported opinion of the Court of Special Appeals contains a thorough description of the facts surrounding the death of the child, Ms. Simms' mental health history, and the state of her mental health at the time of the child's death. *Simms v. Md. Dep't of Health*, 240 Md. App. 294, 300–01 (2019).  We cannot improve upon that summary and therefore do not repeat or summarize it here.

to change Ms. Simms' treatment from the Assertive Community Treatment team to regular out-patient clinical services with QCI Behavioral Health.

B. *The Court's Revocation of Conditional Release and Issuance of Hospital Warrant*

In September 2017, Ms. Simms' therapist expressed concerns to the Health Department that Ms. Simms was exhibiting a "decrease in psychological functioning." The therapist noted that Ms. Simms missed therapy appointments and showed "symptoms of depression, anxiety, irritable mood," and had become "easily distracted[.]" The therapist added that Ms. Simms was "unable to concentrate/focus," experienced "short term memory loss, and" was "grieving the death of her son." The therapist recommended that Ms. Simms "obtain a psychological evaluation and be reconsidered for a higher level of treatment than what is currently being given." The State conducted an investigation pursuant to CP § 3-121(a) and, on September 13, 2017, filed a petition for revocation of Ms. Simms' conditional release. The petition alleged that Ms. Simms violated conditional release by missing required therapy appointments. On the same day, at what had been a regularly scheduled status hearing,[9] the court, although not required by Title 3 to do so, allowed Ms. Simms' counsel to address his concerns about the procedures set forth in § 3-

---

[9] Both the original and modified conditional release orders issued in Ms. Simms' case include a condition that, in the first year, "the Court will hold a hearing every 90 days to determine [Ms. Simms'] progress and compliance with her treatment and release[;]" in subsequent years, such hearings are to be conducted at the discretion of the court. That condition directs Ms. Simms to "appear at each hearing."

8

121(e).[10] As described earlier, those procedures governed the court's decision whether to issue a hospital warrant in response to the State's petition for revocation of conditional release. Counsel for Ms. Simms argued, among other matters, that the procedure for issuance and resultant execution of the hospital warrant violates constitutionally based notions of procedural due process.

The hearing spanned portions of September 13 and 14. The circuit court heard from Ms. Lori Mannino. Ms. Mannino generally described Title 3's procedural regime including—most relevant to the matter before the court at the time—the provisions of § 3-121(a) through (e).

Ms. Simms argued, through counsel, that a hospital warrant could not be properly issued under § 3-121(e) unless the court first found not only probable cause to believe that Ms. Simms had violated conditional release, but also that she currently was a danger to herself, others, or property. Absent such a finding of dangerousness, Ms. Simms argued, the hospital warrant procedures as set forth in § 3-121(e) violate due process.[11]

---

[10] Also present at the hearing were Ms. Simms, her counsel, Assistant State's Attorney Tiffany Campbell, and Lori Mannino, a Community Forensic Aftercare Provider and Ms. Simms' treatment monitor.

[11] Ms. Simms, through counsel, further argued at the hearing before the Circuit Court for Charles County that CP § 3-121(e) violates due process because that subsection does not provide Ms. Simms or other similarly situated persons notice and an opportunity to defend against issuance of a hospital warrant. Ms. Simms continued to press that constitutional claim at the subsequent hearing on her petition for habeas corpus relief. Ms. Simms no longer makes that argument.

9

When the hearing resumed on September 14, counsel for Ms. Simms informed the court that at the close of the previous day's hearing Ms. Mannino, with defense counsel's concurrence, advised Ms. Simms to go to the hospital for a psychiatric evaluation. That same evening, Ms. Simms reported to University of Maryland Charles Regional Medical Center for evaluation but was told to return early the following morning, which she did. Ms. Simms was evaluated by a licensed clinical professional counselor and a doctor who together determined that Ms. Simms did not meet the criteria for in-patient admission at the time of the evaluation. Counsel for Ms. Simms, incorrectly assuming that Ms. Simms was not dangerous to herself or others simply because she did not meet the criteria for in-patient admission, argued, without success, that the court could not legitimately issue a hospital warrant based solely on a probable cause finding that Ms. Simms had violated conditional release.[12]

At the close of the September 14 proceedings, the court, finding probable cause to believe that Ms. Simms had violated conditional release, issued a hospital warrant directing that she be recommitted to the Clifton T. Perkins Hospital Center ("Perkins") for evaluation and examination. The court noted that pursuant to CP § 3-121(f) and (g), an ALJ would determine Ms. Simms' dangerousness at an administrative hearing within ten days of execution of the hospital warrant.

---

[12] As far as we can discern, nothing in Title 3 or elsewhere in the Maryland Code or the Code of Maryland Regulations suggests that the evaluation of Ms. Simms at University of Maryland Charles Regional Medical Center served to assess a committed person's dangerousness, as that concept is described in Title 3.

C. *The ALJ's Hearing and Circuit Court's Ruling*

Seven days after Ms. Simms' admission to Perkins, an ALJ conducted the required hearing to determine whether Ms. Simms violated her conditional release and, if so, whether she was eligible for conditional release.[13] *See* CP § 3-121(f). Among other exhibits presented at that hearing was a report by Dr. Monica Chawla. Dr. Chawla had evaluated Ms. Simms following her admission to Perkins on September 14, 2017. Ms. Simms was placed on ward observation and met with her treatment team on September 18 and 19.

Dr. Chawla's report detailed Ms. Simms' history, symptoms, and risk assessment. Dr. Chawla determined that Ms. Simms would not pose a danger to herself or others if she was discharged with modifications to the conditions of her release. The parties agreed to modify the terms of her release to include a condition that she would voluntarily remain at Perkins until she could be placed at a residential treatment center.

On September 28, 2017, pursuant to CP § 3-121(h), the ALJ recommended that the Circuit Court for Charles County modify Ms. Simms' release conditions to conform with the proposed agreement. On October 20, 2017, that court adopted the findings and recommendations of the ALJ and ordered Ms. Simms' conditional release.

---

[13] Present at the hearing before the ALJ were Ms. Simms and her counsel, Assistant Attorney General Rhonda Edwards, representing the Health Department, and Assistant State's Attorney Campbell.

D. *The Intervening Petition for Writ of Habeas Corpus, Hearing, Ruling, and Appeal*

On September 27, 2017, the day before the ALJ issued his report to the Circuit Court for Charles County, Ms. Simms filed a petition for writ of habeas corpus in the Circuit Court for Howard County[14] seeking her immediate release from confinement at Perkins. The Health Department filed a motion to dismiss the habeas petition, arguing that Ms. Simms had agreed to remain at Perkins as a voluntary patient and had not been denied due process.

On October 23, 2017, the Circuit Court for Howard County, evidently opting not to rule on the motion to dismiss, proceeded to a hearing on the habeas petition. Counsel for Ms. Simms argued that she was eligible for conditional release and that the habeas court should release her pending the Health Department finding a suitable residential program for her.

Most relevant here, Ms. Simms also challenged the Circuit Court for Charles County's issuance of the hospital warrant, contending that CP § 3-121(e) fails to comply with due process. In furtherance of that contention, Ms. Simms argued that the proper legal standard for issuance of a hospital warrant is not merely probable cause that Ms. Simms violated her conditional release, but also probable cause that she is a danger to herself or others.[15]

---

[14] Perkins is in Howard County.

[15] Ms. Simms also argued in the habeas petition that before the hospital warrant issued she had a right to a preliminary hearing, at which she was entitled to have legal representation, notice, and an opportunity to be heard. As noted previously, *supra* note 11, Ms. Simms does not advance that argument here.

The Health Department argued that the Circuit Court for Charles County followed the procedures set forth in CP § 3-121 when issuing the hospital warrant and that those procedures comport with due process. The Health Department explained that the circuit court need not make a dangerousness determination at the hospital warrant stage because the committed person is inherently dangerous based on that person's criminal conviction. The Health Department further argued that Title 3 provides that a committed person can be conditionally released so long as the committed person abides by the conditions. The Health Department added that the State's petition for revocation gave the circuit court the information it needed to determine whether Ms. Simms violated conditional release and, based on that information, the circuit court properly issued the hospital warrant. The Health Department responded to Ms. Simms' claim of a lack of procedural due process, noting that § 3-121 affirmatively provides due process, as reflected by the multiple layers of review set forth in that section of Title 3.

The habeas court issued a memorandum opinion and order denying the petition on October 31, 2017. The court rejected Ms. Simms' contention that the court's issuance of the hospital warrant deprived her of procedural due process. The habeas court ruled that the hospital warrant was supported by probable cause that Ms. Simms had violated conditional release, and that Ms. Simms' recommitment pursuant to the hospital warrant did not violate her due process rights.

Ms. Simms noted an appeal to the Court of Special Appeals. That court affirmed the circuit court's denial of the writ of habeas corpus. *Simms v. Md. Dep't of Health*, 240 Md. App. 294 (2019).[16]

We granted certiorari to answer three interrelated questions presented by Ms. Simms. All three, either directly or indirectly, turn on whether either or both the Due Process Clause of the Fourteenth Amendment and its counterpart provision in Article 24 of the Maryland Declaration of Rights require a court, before issuing a hospital warrant pursuant to CP § 3-121(e), to find probable cause to believe (1) the committed person violated the term(s) of conditional release and (2) the committed person is no longer eligible for conditional release because the person poses a danger to self, others, or property.[17]

---

[16] The parties concede that this matter is not moot. We agree, for reasons we explained in *Powell v. Md. Dep't of Health*, 455 Md. 520 (2017). We stated:

> [E]ven if no controversy exists at the precise moment that the case is before the appellate court, it will not be deemed moot if the controversy between the parties is capable of repetition, yet evading review. This exception applies when (1) the challenged action was too short in its duration to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.

455 Md. at 540–41 (internal quotations and citations omitted). This exception applies to the situation here, given Ms. Simms is subject to conditional release for five years, and may be charged during the interim with violating one or more conditions of release, prompting the State to file a petition for a hospital warrant.

Moreover, "[e]ven if it is unlikely that the same party will be subject to the same action," the issue Ms. Simms has brought to us "is of public importance and affects an identifiable group for whom the complaining party is an appropriate surrogate[.]" *Id.* at 541.

[17] Ms. Simms framed the questions as follows:

We hold that compliance with procedural due process requires only that before issuing a hospital warrant, the court find probable cause to believe that the committed person violated one or more terms of conditional release. Therefore, we need not address Ms. Simms' remaining questions, as both rely on the premise that the court should have made a dangerousness determination before issuing a hospital warrant.

## III.

## Discussion

A. *The Parties' Contentions*

Ms. Simms argues that procedural due process demands that upon the State's filing a petition for revocation or modification of a committed person's conditional release, the court must find probable cause to believe that the committed person not only (1) violated

---

1. In order to issue a hospital warrant, which initiates the process of revoking conditional release granted to individuals who have been found guilty but not criminally responsible, does a circuit court only have to find probable cause to believe that the individual violated a term of the conditional release order, or does the court also have to find probable cause to believe that the individual poses a danger to self, others, or property?
2. In order to comply with constitutional due process, must § 3-121 of the Criminal Procedure Article be interpreted to require that a hospital warrant may be issued only where the warrant-issuing court finds probable cause to believe that the patient poses a danger to self, others, or property?
3. Did the Circuit Court for Howard County err in concluding that the Circuit Court for Charles County properly issued a hospital warrant predicated only upon a finding that Petitioner violated a term of the conditional release order, where Petitioner presented compelling evidence that she was not a danger to self, others, or property?

15

terms of conditional release but also (2) currently poses a danger to herself, others, or property. In support of this contention, Ms. Simms asserts that a committed person alleged to have violated conditional release cannot be presumed dangerous and therefore cannot be detained pursuant to a hospital warrant unless a court first makes a probable cause finding of dangerousness.

Ms. Simms recognizes that a presumption of dangerousness attaches when a person is found guilty of a criminal act but not criminally responsible for its commission. She argues that once released on conditional release, the dangerousness presumption that attends the finding of not criminally responsible does not extend to the stage at which the court must determine whether to issue a hospital warrant. Ms. Simms contends that the dangerousness associated with a committed person's having been convicted of a criminal act is distinct from the dangerousness, if any, that is associated with a violation of a conditional release order. Based on that premise, Ms. Simms argues that any potential dangerousness attributable to a violation of conditional release must be assessed independently, given the therapeutic purpose of conditional release.

According to Ms. Simms, procedural due process demands that the court be constrained from issuing a hospital warrant without first finding the committed person dangerous to self, others, or property. She argues that because in her case the court did not make a dangerousness finding, the court's issuance of a hospital warrant and Ms. Simms' resulting involuntary detention at an in-patient mental hospital violated the

procedural process due her under either or both the Federal Constitution or Maryland Declaration of Rights.[18]

The Health Department counters that the conditional release procedures laid out in CP § 3-121 comply with procedural due process under the Federal Constitution and our Declaration of Rights. The statutory scheme recognizes the presumed dangerousness of a person who has been convicted of a criminal act yet found not criminally responsible for the commission of that act. According to the State, Title 3 further reflects that the presumption of dangerousness does not dissipate over the course of therapeutic treatment. The persistence of the dangerousness presumption notwithstanding, in appropriate circumstances a committed person's course of treatment may include release to the community under specific court-ordered conditions requiring the committed person's compliance. The Health Department therefore rests on the assertion that the multi-step procedures attendant to the revocation or modification of an order of conditional release comport with procedural due process.

---

[18] Ms. Simms also argues that the habeas court erred in failing to recognize that the Circuit Court for Charles County wrongly issued a hospital warrant predicated only upon a finding that she violated a term of the conditional release order, notwithstanding that Ms. Simms presented compelling evidence that she was not a danger to self, others, or property. This argument presupposes Ms. Simms' entitlement to a hearing at the hospital-warrant-issuing stage.

As noted above, we need not consider this contention because we rest our decision on constitutional grounds. Even so, because CP § 3-121(e) does not require such a finding, the habeas court committed no error in rejecting Ms. Simms' argument that the warrant-issuing court omitted to make that finding.

B. *Analysis*

It is understood that a person who has been convicted of a crime yet found not criminally responsible for its commission is presumed dangerous. *See Bergstein v. State*, 322 Md. 506, 519 (1991) ("The finding [that a person is not criminally responsible] presupposes that he committed an illegal act. Inherent in this inference is the indicia of continuing dangerousness."); *see also Jones v. United States*, 463 U.S. 354, 364 (1983) ("The fact that a person has been found, beyond a reasonable doubt, to have committed a criminal act certainly indicates dangerousness.").

It is likewise "clear that 'commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" *Id.* at 361 (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)). Such protection ensures that "the state-created right is not arbitrarily abrogated." *Vitek v. Jones*, 445 U.S. 480, 489 (1980) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)). Ms. Simms, having been convicted of a crime but found not criminally responsible for the criminal act, is entitled to the procedural process demanded by the Federal Constitution and our Declaration of Rights. *See Harrison-Solomon v. State*, 442 Md. 254, 287–88 (2015) (stating that commitment and conditional release must comply with the Due Process Clause of the Fourteenth Amendment and its counterpart provision Article 24 of the Maryland Declaration of Rights).

Equally important, however, is the recognition that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Jones*, 463 U.S. at 367–68 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The question here, then, is what procedural process was owed Ms. Simms once the State petitioned for

18

revocation or modification of her conditional release and the petition was in the hands of the court. The legal standard that governs our analysis of this constitutional question is *de novo*. *See Davis v. Slater*, 383 Md. 599, 604 (2004); *see also Highmark Inc. v. Allcare Health Mgmt. Sys. Inc.*, 134 S.Ct. 1744, 1748 (2014).

We begin our consideration of this question with the observation that Ms. Simms was presumed dangerous while on conditional release. As we explained in *Bergstein*, inherent in the commission of an illegal act "is the indicia of continuing dangerousness." *Bergstein*, 322 Md. at 519 (citing *Jones*, 463 U.S. at 363–64). This presumption is implied in *Hawkes v. State*, 433 Md. 105 (2013). There, we detailed the difference between discharge from commitment and conditional release. *Id*. at 133–34 (comparing CP § 3-114(b) with § 3-114(c)). We held that to qualify for conditional release a person must demonstrate that appropriate conditions would mitigate dangerousness. *Id.* at 132–36 (citing CP § 3-114(d) ("a committed person has the burden to establish by a preponderance of the evidence eligibility for discharge or eligibility for conditional release.")). We explained that "the determination of whether a patient poses a danger to himself or others must take into account proposed conditions of release." *Id.* at 108–09. We explained how discharge from commitment requires "that a person would not be a danger, as a result of mental disorder or mental retardation, to self or to the person or property of others if discharged[,]" whereas conditional release requires "that [the] person would not be a danger, as a result of mental disorder or mental retardation, to self or to the person or property of others if released from confinement *with conditions imposed by the court.*" *Id.* at 133 (quoting CP § 3-114(b)–(c)) (emphasis in original). Implicit in this holding is

19

that a person on conditional release is presumed dangerous but for imposition of and compliance with conditions. Our research disclosed no case of the Supreme Court, this Court, or the Court of Special Appeals that intimates, much less declares, the contrary.

As provided in CP § 3-121(e), the Circuit Court for Charles County, upon receipt and review of the State's petition for revocation of her conditional release, found probable cause to believe that Ms. Simms had violated her conditional release. Based on that probable cause finding, the court issued a hospital warrant and directed that Ms. Simms "shall be transported to the facility designated by the Health Department[.]" CP § 3-121(e)(1). Ms. Simms, as noted earlier, was then taken to Perkins.

To be clear, Ms. Simms has *no* complaint about the hearing before the ALJ, which occurred seven days after the hospital warrant was executed and she was recommitted to Perkins. *See* CP § 3-121(f)–(g). Her quarrel is solely with the statutory procedure at the hospital warrant stage. Ms. Simms' asserted due process concern rests on the omission of a finding by the court at *that* stage that she is presently a danger "to self or to the person or property of others[.]" CP § 3-114(c). Ms. Simms argues that due process demands such a finding of dangerousness *before* a hospital warrant may be issued by the court. We disagree.

Given her presumed dangerousness, Ms. Simms' recommitment to Perkins upon execution of the hospital warrant was a reasonable and, it appears, necessary prerequisite to the revocation hearing that the ALJ convened seven days later. Upon her admission to Perkins on September 14, 2017, Ms. Simms was medically evaluated by Dr. Chawla, whose report was presented at the hearing before the ALJ on September 21, 2017. Dr.

20

Chawla's report contained her determination that Ms. Simms would not pose a danger to herself or others if she was discharged with modifications to the conditions of her release.

We emphasized in *Bergstein* that, although conditional release is "part of a continuing course of treatment" for committed persons, it nevertheless remains a form of commitment. 322 Md. at 516. Underpinning conditional release is the expectation that the committed person would not pose a danger *so long as* she follows the terms of her conditional release. *See* CP § 3-114(c) ("Conditional release"). Conditional release presupposes that compliance with the conditions imposed renders the committed person not a danger to self or the person or property of others. It follows that the failure of compliance erases the statutory presupposition of mitigated dangerousness that attends compliance with the conditions of conditional release.

Therefore when, as here, a committed person on conditional release is alleged by the State to have violated one or more of those conditions, the presupposition of lack of dangerousness that accompanies compliance dissipates. Upon receipt of the State's petition alleging a violation of conditional release, it is incumbent upon the court to determine whether there is probable cause to believe that the committed person violated conditional release. CP § 3-121(d)–(e). Inherent in the court's finding of probable cause that a violation occurred is the presumption that the committed person is dangerous. That finding triggers the court's issuance of the hospital warrant. Commitment pursuant to execution of the hospital warrant prompts, within ten days, the full hearing before the ALJ to which Ms. Simms is entitled. *See* CP § 3-121(f)–(g).

21

This procedural sequence of events comports with due process. The court's issuance of a hospital warrant, upon a finding of probable cause to believe the committed person has violated conditional release, is a necessary prerequisite to the revocation hearing. It is at the revocation hearing that the committed person, entitled to counsel and given the opportunity to present evidence, has the chance "to demonstrate that, notwithstanding the violation, the patient would not be a danger to himself/herself or others if permitted to remain out of the hospital under existing or modified conditions." *Bergstein*, 322 Md. at 517.

## IV.

### Conclusion

We conclude from all the above that Ms. Simms received the process to which she was due under CP § 3-121. It is the probable cause finding that a violation of conditional release occurred that enables the court to properly commit the individual until the speedy hearing before an ALJ, at which time Ms. Simms was entitled to, and received, full due process rights.

We therefore hold that CP § 3-121 appropriately balances the interests of society against a committed individual's conditional liberty interest. Accordingly, we affirm the judgment of the Court of Special Appeals, which came to the same conclusion.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

22